**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lakhwinder Singh, | No. CV-26-01685-PHX-DWL (JFM) |
| Petitioner, | **ORDER** |
| v. | |
| Unknown Party, et al., | |
| Respondents. | |

This is habeas corpus action under 28 U.S.C. § 2241.  The relevant facts are as follows.  On October 12, 2023, Petitioner—a native and citizen of India—entered the United States without inspection, was detained by Border Patrol agents, was issued a notice to appear for removal proceedings, and was then released on his own recognizance.  (Doc. 1 ¶¶ 28-29.)  After being released, Petitioner filed a petition for asylum, "appeared at all required immigration court hearings and ICE check ins," and "did not violate any laws of the United States." (*Id.* ¶ 30.)  On February 3, 2026, Petitioner was pulled over by highway patrol agents for unspecified reasons. (*Id.* ¶ 32.)  The highway patrol agents contacted ICE agents, who arrived at the scene and placed Petitioner in immigration detention.  (*Id.*)

On March 11, 2026, Petitioner filed his habeas petition.  (Doc. 1.)  First, Petitioner contends the Department of Homeland Security ("DHS") "violated the Fifth Amendment when it revoked [his] liberty under his Order of Supervision ('OSUP') and re-detained him without notice or a pre-deprivation hearing." (*Id.* ¶ 39.)  Second, Petitioner contends that "Respondents lack statutory authority to detain [him] under INA § 235(b) because DHS

initially released him pursuant to INA § 236, 8 U.S.C. § 1226." (*Id.* ¶ 88.)

In an April 17, 2026 order, the Court granted the petition as to the second claim. (Doc. 8.) More specifically, the Court concluded "that Petitioner is, at a minimum, entitled to a bond hearing based on his §§ 1225/1226 challenge for the reasons articulated in" this Court's earlier decision in *Echevarria v. Bondi*, 2025 WL 2821282 (D. Ariz. 2025). (*Id.* at 1.) The Court "acknowledge[d] that Petitioner seeks immediate release, not just a bond hearing, but if Petitioner is released following the bond hearing, that outcome will moot his remaining claim[]. The Court will thus take Petitioner's remaining claim[] under advisement pending the outcome of the bond hearing." (*Id.* at 1-2.)

On April 22, 2026, the bond hearing took place. (Doc. 12 at 2.) "Although the IJ found that Petitioner did not pose a danger to the community, he denied Petitioner's request for bond finding that he was a flight risk." (*Id. See also* Doc. 13 [IJ's order].) Accordingly, Petitioner's remaining Fifth Amendment claim is now ripe for resolution.

The Court concludes that Petitioner is not, at least on the present record, entitled to release from custody. As an initial matter, to the extent Petitioner challenges how his "OSUP" was revoked (Doc. 1 ¶¶ 1, 10, 39, 44, 56, 60, 73, 75, 78, 79, 80, 83, 87, 89), these arguments are based on a faulty premise. An "OSUP," or order of supervision, is issued when an alien is ordered removed from the United States but DHS cannot effectuate removal during the removal period and thus agrees to release the alien from immigration custody pursuant to certain conditions of supervision. DHS has issued detailed regulations concerning when an OSUP may be revoked and the procedures that must be followed upon revocation. *See generally Nguyen v. Rosa*, 2026 WL 1382306, *2 (D. Ariz. 2026). "A habeas petitioner may challenge ICE's compliance with these regulations under the *Accardi* doctrine . . . ." *Id.*

As Respondents correctly note, "Petitioner was never released on OSUP." (Doc. 6 at 2.) Instead, Petitioner was released pursuant to a document entitled "Order of Release on Recognizance," which is also known as Form I-220A. (Doc. 1-1 at 8.) Thus, Respondents are correct that "the requirements set forth in 8 C.F.R. §§ 241.4(l)(1)-(2) and

241.13(i) prior to revoking OSUP do not apply here" and there is "no violation of [the] OSUP regulations." (Doc. 6 at 2.)[1]

More broadly, Petitioner acknowledges there is no statute or regulation that entitles him to a pre-deprivation hearing before he may be detained following his release from immigration custody. (Doc. 7 ¶ 21.) To the contrary, the applicable statutory and regulatory provisions contemplate such detention without a pre-deprivation hearing. 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien."); 8 C.F.R. § 236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of [certain officials], in which event the alien may be taken into physical custody and detained."). Many courts have recognized as much. *See, e.g.*, *Singh v. Noem*, 2026 WL 766228, *8 (D.N.M. 2026) ("Beginning with the plain [statutory] text, the Attorney General is afforded immense discretion to revoke parole 'at any time.' Further, the regulations specifically provide for Petitioner's exact situation. Petitioner, a noncitizen, was arrested and taken into custody before being released. Under the regulations, 'such release may be revoked at any time in the discretion of [a listed official], in which event the alien may be taken into physical custody and detained.' There is nothing in the text of the statute or regulation that suggests a hearing is required before detaining a noncitizen released under § 1226(a).") (cleaned up); *Garcia v. Jamison*, 2026 WL 1122608, *3 (E.D. Pa. 2026) ("Although noncitizens are permitted to seek an immigration judge's review of their bond revocation, a plain reading of Section 1226 and its implementing regulations shows that noncitizens are not entitled to notice or a hearing *before* their bond is revoked and they are re-detained."); *O.F.C. v. Almodovar*, 2026 WL 74262, *6 (S.D.N.Y. 2026) ("Nothing in the brief text of the statute and the accompanying regulations suggests that procedural protections such as notice of the intention to revoke parole, service of the

---

[1] In his reply, Petitioner "acknowledges that he was released on his own recognizance pursuant to INA § 236(a), 8 U.S.C. § 1226(a), . . . and not on an Order of Supervision." (Doc. 7 at 2 n.1.)

evidence justifying revocation, and a hearing before a neutral arbitrator are required prior to re-arrest and redetention.  As courts have explained, Section 1226 does not require 'some sort of adversarial hearing-like process . . . before DHS may exercise its discretion to detain a noncitizen.'") (citation omitted).  Petitioner nevertheless argues that he has a constitutional right to such hearing under the Fifth Amendment.

This is a difficult issue that has not been squarely addressed by the Ninth Circuit and has divided lower courts.  Having carefully considered the relevant factors under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which the Ninth Circuit has "assume[d] without deciding" applies in this context and which provides "a flexible test that can and must account for the heightened governmental interest in the immigration detention context," *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022), the Court concludes that Petitioner did not have a constitutional right to a pre-deprivation hearing.  "Under *Mathews*, the identification of the specific dictates of due process generally requires consideration of three distinct factors.  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 1207 (cleaned up).

The Court has little trouble concluding that the first *Mathews* factor favors Petitioner.  "A person's interest in freedom from physical detention is the most elemental of liberty interests.  Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects.  Even . . . a noncitizen released from custody on bond . . . has a protected liberty interest in his continued liberty." *Garcia*, 2026 WL 1122608 at *6 (cleaned up).

In contrast, the Court concludes that the third *Mathews* factor favors Respondents. "When considering the Government's interest, the Supreme Court has instructed that it must weigh heavily in the balance that control over matters of immigration is a sovereign

- 4 -

prerogative, largely within the control of the executive and the legislature. The Government has an interest in enforcing its immigration policies and preventing noncitizens from remaining in the United States in violation of our law. The Court recognizes that over no conceivable subject is the legislative power of Congress more complete. Thus, the Government's interest in enforcing its immigration policies is considerable." *Singh*, 2026 WL 766228 at *9 (cleaned up). Moreover, Petitioner makes little effort to grapple with the additional fiscal and administrative burdens that would flow from requiring the sort of pre-deprivation hearings that he contends are constitutionally required. Although some courts have viewed those burdens as "minimal" (or non-existent) in the course of recognizing a Fifth Amendment right to a pre-deprivation hearing in this context, *see, e.g., J.C.E.P. v. Wofford*, 2025 WL 3268273, *7 (E.D. Cal. 2025), the Court respectfully disagrees—requiring DHS and the already overburdened immigration court system to follow a new set of judge-created procedures and provide a new form of judge-mandated pre-deprivation hearings would create additional burdens.

The outcome thus turns on the evaluation of the second *Mathews* factor. In the Court's view, this factor favors Respondents. Although Petitioner seeks (Doc. 1 ¶¶ 47-49, 59) to draw parallels between this case and *Morrissey v. Brewer*, 408 U.S. 471 (1972), Petitioner ignores that those parallels weaken rather than strengthen his position. As one court recently explained:

> [T]he problem for Petitioner . . . is that even assuming the *Morrissey* line of cases applies in this context, those cases undercut, rather than support, his argument that he was entitled to notice and a hearing *before* being re-arrested and redetained. In *Morrissey*, the Supreme Court held that individuals released on criminal parole are entitled to due process when the Government seeks to revoke that parole, but with respect to "the nature of the process that is due," the Court explained that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient *after arrest* while information is fresh and sources are available." The Court went on to add that "due process requires that *after the arrest*, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case." Such a preliminary hearing is

designed "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions" and that such acts justify "hold[ing] the parolee for the final decision of the parole board on revocation." Accordingly, it is well established that individuals whose parole or probation the Government seeks to revoke may be temporarily detained for the purpose of determining whether to hold those individuals pending a final parole or probation revocation hearing. The Court therefore disagrees with any suggestion that *Morrissey* and its progeny require process in the form of pre-arrest notice and an opportunity to be heard.

*O.F.C.*, 2026 WL 74262 at *8 (cleaned up). Put another way, "the Supreme Court has specifically held that a prompt post-arrest hearing is sufficient in the context of revoking certain forms of conditional liberty, and that determination undermines Petitioner's contention that a pre-arrest hearing was required here." *Id.*[2]

The risk of an erroneous deprivation is further undermined by the fact that "[t]he regulations allow a noncitizen to appeal the revocation of bond and re-detention to an immigration judge, and, if requested, to the BIA. . . . [T]hese subsequent procedures serve to ensure that the Government's decision to revoke a noncitizen's bond is not arbitrary or capricious . . . [and] does not pose a substantial risk of erroneous deprivation." *Garcia*, 2026 WL 1122608 at *6 (cleaned up). As another court recently explained:

> Despite the weighty liberty interests implicated by the Government's detention of noncitizens under § 1226(a), the Court does not deny that in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. The Supreme Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process. Further, the Government has wide discretion to arrest and detain a noncitizen pending a decision on whether the alien is to be removed from the United States. This is not a case where Petitioner, if re-detained, stands to be held indefinitely,

---

[2] The Court acknowledges that the district court in *O.F.C.* provided this analysis in the course of concluding that "due process does not require a pre-arrest hearing for noncitizens released on bond who have been convicted of crimes while on release" and declined to address the constitutionality of those procedures "outside the context of noncitizens who have been convicted of a crime while released on bond." *O.F.C.*, 2026 WL 74262 at *12. Nevertheless, the Court finds this analysis equally applicable in this context.

- 6 -

or contemplates that he will not receive any further process as to his entitlement to release on bond. . . . [I]ndividuals detained under Section 1226(a) are afforded a variety of procedural protections, including (i) a bond hearing that stands separate and apart from removal proceedings, in which both sides submit evidence; (ii) an appeal of that bond hearing; and (iii) the possibility of a bond redetermination if and when circumstances have materially changed.

*Reyes v. King*, 2021 WL 3727614, *11 (S.D.N.Y. 2021). The Court finds this analysis persuasive and adopts it here.[3]

The circumstances of this case underscore why the existing statutory and regulatory protections available to aliens in Petitioner's situation are sufficient to provide adequate due process. After being detained, Petitioner was afforded a bond hearing (albeit only after this Court ordered it, due to the lingering uncertainty in the Ninth Circuit over how § 1225 and § 1226 apply to aliens like Petitioner). The immigration judge then denied Petitioner's request for bond, finding that Petitioner is a flight risk, and apparently based that determination at least in part on a new fact not in existence at the time of Petitioner's initial release—namely, that Petitioner was unlikely to succeed on his request for asylum because his applications for relief had since been denied. (Doc. 12 at 2 & n.1.) To the extent Petitioner disagrees with the immigration judge's flight-risk finding (Docs. 12, 15), he has the right to appeal that finding to the BIA. *Cf. Herrera v. Secretary of the U.S. Dep't of Homeland Sec.*, 2026 WL 1469404, *1-2 (N.D. Ohio 2026) (concluding that a § 2241 habeas petitioner who had been released and then redetained was "entitled to a bond hearing pursuant to § 1226 of the INA" but rejecting the argument that the habeas petitioner was also entitled to "immediate release" based on the alleged unlawfulness of the decision to redetain him without notice or a hearing: "[N]o statute or regulation requires Respondents to provide a particular reason for terminating Petitioner's release pending a removal decision under § 1226(a). Continued release is discretionary, and the proper avenue to remedy Petitioner's allegedly improper detention is § 1226(a)'s bond hearing

---

[3]   For similar reasons, this Court has concluded there is no right to a pre-deprivation hearing before an OSUP revocation. *Nguyen*, 2026 WL 1382306 at *2 n.1

framework.  The Court therefore disagrees with the R&R's conclusion that Respondents violated Petitioner's Constitutional rights in connection with his December 2025 arrest.").

This conclusion is consistent with the Ninth Circuit's recent observation that, "after the Supreme Court's decisions in [*Jennings v. Rodriguez*, 583 U.S. 281 (2018)] and [*Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)], it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute." *Rodriguez Diaz*, 53 F.4th at 1201.  Of course, courts must not shirk their duty to enforce constitutional rights, but courts must also not be too quick to interpret the Fifth Amendment as requiring extra-statutory procedures and remedies on top of those Congress has chosen to provide in the immigration-detention context.  *See generally Demore v. Kim*, 538 U.S. 510, 521 (2003) ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.") (citation omitted); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("It is pertinent to observe that any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

The final matter to address is the "motion to enforce" that Petitioner recently filed.  (Doc. 15.)  In addition to reasserting "the due process claim expressly reserved in [the] April 17, 2026 Order" (*id.* at 2), the motion also appears to attempt to raise new grounds for challenging Petitioner's detention beyond those set forth in the habeas petition.

On the one hand, this is an improper way to attempt to raise new grounds for seeking relief.  Instead, Petitioner should have filed a motion to amend his habeas petition.  Additionally, to the extent Petitioner now seeks to challenge how his bond hearing was conducted and how the immigration judge weighed the flight-risk evidence (*id.* at 4-9), these arguments do not provide a basis for granting relief in this § 2241 action—the proper way to seek review of those sorts of claims is "via the BIA review process." *Mancia v.*

*Bondi*, 2026 WL 1596259, *4 (D. Ariz. 2026).

On the other hand, to the extent the "motion to enforce" (or any of Petitioner's other post-petition filings) seek to raise other grounds for challenging the legality of Petitioner's detention beyond those addressed in this order and the April 17, 2026 order, the Court will afford Petitioner an opportunity to file an amended petition. As noted, the petition operates from the mistaken premise that Petitioner was released pursuant to an OSUP, when in fact he was released pursuant to a Form I-220A. Presumably for that reason, the petition does not address whether DHS complied with the relevant regulatory provisions when purporting to revoke Petitioner's Form I-220A, and it is not clear based on the Court's independent review of the record that DHS did so. Courts have granted relief on this basis in similar cases. *See, e.g.*, *Singh*, 2026 WL 766228 at *7-8 ("Although Petitioner asks this Court to recognize a protected liberty interest in receiving a hearing prior to being detained again under § 1226(a), the Court finds that, in Petitioner's case, even the minimal procedural due process rights he is afforded by statute have been violated. . . . While the regulations allow for Petitioner's release to be revoked 'at any time,' it must be in the discretion of 'the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge.' There is no indication that any of these officials revoked Petitioner's conditional release. . . . Petitioner has a liberty interest in Respondents *properly* revoking his conditional parole prior to detaining him again."); *Sandhu v. Mullin*, 2026 WL 1146643, *4 (D. Neb. 2026) ("There is no question the statute gives the government 'immense discretion.' But as the regulation shows, that discretion must be exercised by *someone*. Here, there is no evidence a 'district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge' exercised discretion to revoke Sandhu's conditional parole. In fact, the section of Sandhu's order of release on recognizance titled 'Cancellation of Order' is blank. That suggests no officer, let alone a listed officer, revoked Sandhu's conditional parole. It appears, based on the evidence before the Court, the government

failed to comply with the statutory and regulatory regime governing revocation here.") (cleaned up).  Granting leave to amend will ensure that the issues are properly presented and that both sides have a chance to be heard, consistent with the party-presentation principle.

Accordingly,

**IT IS ORDERED** that:

1.      The remaining claim in the habeas petition (Doc. 1) is **denied**.

2.      The "motion to enforce" (Doc. 15) is **granted in part**, to the extent it seeks leave to amend, and **denied in part**, to the extent it seeks immediate release from custody.

3.      Within 14 days of the issuance of this order, Petitioner may file an amended habeas petition.  If so, Petitioner must file a redlined copy of the petition, showing how it differs from the original petition, as an attachment.

4.      If Petitioner does not file an amended habeas petition within 14 days of the issuance of this order, the Clerk shall enter judgment accordingly and terminate this action.

Dated this 26th day of June, 2026.

Dominic W. Lanza
United States District Judge